**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

          **Plaintiff-Respondent,**

**v.**                                        **Civ. 04-0914 JC/LCS**
                                               **Cr.  03-1134 JC**

**RAMONA MANUELA RAMIREZ,**

          **Defendant-Petitioner.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION**

       **THIS MATTER** is before the Court upon Movant's (Ramirez's) Motion Vacate, Set Aside
or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed August 12,
2004. (Doc. 74)[1].  Ramirez, currently incarcerated and proceeding *pro se,* attacks the plea entered
on September 8, 2003 and the Sentence entered on January 27, 2004, in the case styled *United States
of America v. Ramona Manuela Ramirez*, and numbered CR 03-1134 JC, United States District
Court for the District of New Mexico.  The United States Magistrate Judge, having considered the
arguments of counsel, record, relevant law, and being otherwise fully informed, finds that Ramirez's
Motion is not well-taken and recommends that it be **DENIED**.

**I.**      **Proposed Findings**

       1.      On April 2, 2003  Petitioner and her Co-Defendant , Rosario Ramirez Simental, were
stopped at  the I-25 border patrol checkpoint, marker 26.  (Doc. 1).  Petitioner was recognized by
a Border Patrol agent as being subject to a lookout regarding alien smuggling activity and upon

---

[1] Docket numbers correspond to *United States of America v. Ramona Manuela Ramirez*, CR 3-1134 JC.

inspection of her vehicle, two aliens were found hiding in the back seats. (*Id.*)  Petitioner was arrested for knowingly and recklessly disregarding that the two aliens had entered the United States in violation of law,  and "did transport, or move or attempt to transport or move such aliens within the United States by means of transportation or otherwise," and attempted to "conceal, harbor, or shield from detection such aliens."  (*Id.*)  On June 18, 2003, Petitioner was indicted with:

A. one count of unlawfully, knowingly and intentionally combining, conspiring, confederating and agreeing with other persons to bring in illegal aliens for private financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B)(ii), which began on or about January 14, 2001 and continued through April 2, 2003 within the State and District of New Mexico and elsewhere [Count I],

B. one count of knowingly and recklessly disregarding that Juan Gabriel Cruz-Martinez, an alien, had come to, entered and remained in the United States in violation of the law and did transport and move and attempt to transport and move said alien within the United States by means of transportation in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i), and (a)(1)(A)(v)(II) on April 2, 2003 in Dona Ana County, New Mexico [Count II], and

C. one count of knowingly and recklessly disregarding that Gumaro Jimenez-Palma, an alien, had come to, entered and remained in the United States in violation of the law and did transport and move and attempt to transport and move said alien within the United States by means of transportation in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i), and (a)(1)(A)(v)(II) on April 2, 2003 in Dona Ana County, New Mexico [Count II]. (Doc. 21).

2.      On April 3, 2003, Charles A. Harwood, Esq., was appointed to represent Petitioner. (Doc. 6).  On June 27, 2003, L. Val Whitley, Esq., was substituted as counsel for Petitioner.  (Doc. 22).  At his arraignment on July 2, 2003, Petitioner entered a plea of not guilty on all counts and jury trial was set for August 12, 2003.  (Docs. 24, 25).  Petitioner's trial was subsequently continued until September 22, 2003.  (Doc. 34).

3.      On September 8, 2003, Petitioner pleaded guilty to Count I, conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 371, pursuant to a plea agreement. (Doc.  46 at 2).  The plea agreement made clear that the maximum penalty the Court

could impose was "imprisonment for a period of not more than five (5) years" and that the defendant understood this term. (*Id.*)    Petitioner also agreed to pay a special penalty assessment of $100.00 at the time of sentencing. (*Id.* at 6-7.)  Petitioner's Total Offense Level was computed at 13 and the agreement also indicated that she agreed with the government that sentencing should be at the high end of the guideline range. (*Id.* at 3).  The parties stipulated that if Petitioner demonstrated acceptance of responsibility pursuant to U.S.S.G.§ 3E1.1 and provided an oral statement to the United States Probation Officer who prepared the Presentence Report ("PSR"), she would be entitled to a reduction of two levels. (*Id.* at 4.)  The parties further stipulated that in return for the benefit conferred upon Petitioner by entering into the plea agreement, she agreed that she would not seek a downward departure for the applicable offense level as determined by the court. (*Id.*)  However, the plea agreement also indicated that Petitioner could move for a departure if she believed that the criminal history category overstated the seriousness of her criminal history. (*Id.*)  The government agreed that it would not bring additional charges against Petitioner arising out of her conduct then known to the United State's Attorney's Office for the District of New Mexico. (*Id.* at 5-6).  The parties agreed that the plea of guilty was made freely and voluntarily. (*Id.* at 6).  The plea agreement recounted that the parties understood the stipulations were not binding on the Court and that Petitioner "knowingly waived the right to appeal any sentence within the guideline range. . . ." (*Id.* at 4, 5).

      4.   The PSR established Petitioner's base offense level at 13, consistent with her plea agreement. (PSR ¶ 41).  The PSR determined that Petitioner had fraudulently used a Visa credit card without consent, had been investigated and found guilty of driving a car while intoxicated, and that she had been found guilty for another offense but no other information regarding the particular

offense was found at the time the PSR was disclosed.  (PSR ¶¶ 43-45).  Based on a total of three criminal history points, Petitioner was assigned to Criminal History Category II.  (PSR ¶ 46).  With a base level offense of 13 and a Criminal History Category II, Petitioner's guideline imprisonment range was  15 to 21 months.  (PSR at 18).

5.      Petitioner, through counsel, filed a Motion for a downward departure based on her criminal history, which she argued should be reduced from Criminal History Category II to Criminal History Category 1.  (Doc. 56 at 2).  This reduction would have led to a decrease in her sentence by three months.  (*Id.*)

6.      Petitioner's sentencing hearing was held on January 27, 2004.  At the hearing, Petitioner's counsel again stressed that he believed Petitioner's criminal history had been over represented but the Court denied Petitioner's Motion. (Tr. Sentencing 1/27/04 p. 4-7).  Petitioner expressed that when she signed the plea agreement she only had two minutes to review it before signing it.  The Court questioned Petitioner whether she wanted to withdraw her plea.  She stated, "I want to withdraw my plea."  The Court stated that the plea colloquy held during Petitioner's plea hearing on September 8, 2003 was thorough and Petitioner was not allowed to withdraw her plea. (Tr. Sentencing 1/27/04 p. 9).  The Court then sentenced Petitioner to a 21 month term of imprisonment, with three years of supervised release.  (Tr. Sentencing 1/27/04 p. 10); ( Doc. 61). The also levied a special assessment of $100.00.  (Tr. Sentencing 1/27/04 p. 11); ( Doc. 61). Further, Petitioner was required to participate in and complete a substance abuse program, refrain from using and possessing alcohol or other intoxicants, and she was prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts without the prior approval of a probation officer. (Tr. 1/27/04,  Sentencing  at. 10-11); (

4

Doc. 61).  The  Court dismissed Counts II and III by Order on February 9, 2004.  (Doc. 63).

7. On August 12, 2004, Ramirez filed her Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. 74) essentially raising the following issues:

I.     Whether Petitioner was denied effective assistance of counsel when L. Val Whitley inadequately reviewed the plea agreement with Petitioner which resulted in a plea that was not knowing and voluntary.

II.    Whether Petitioner was denied effective assistance of counsel when L. Val Whitley failed to present mitigating circumstances, such as her truthfulness and timely acceptance of responsibility, to the Court.

III.   Whether Petitioner was denied effective assistance of counsel because she received a sentence of 21 months of imprisonment which violated the Eighth Amendment's clause against cruel and unusual punishment and the the Fourteenth Amendment's right to equal protection of the law.  (Doc. 74).

Petitioner further alleged that her Fifth Amendment rights were violated; however, the Court does not believe that Petitioner's claims are related to this provision of the Constitution.  Respondent filed a Response to Petitioner's motion on October 18, 2004.  (Doc. 82).  On November 3, 2005, Petitioner filed a Reply to Respondent's Response including the following additional claims: 1) Assistant United States Attorney Peter Ossorio was without authority because there was no "Designation Order" and 2) The government engaged in malicious prosecution.  (Doc. 83 at 1-2, 8).[2] Finally, Petitioner filed an Addendum to her § 2255 Motion on February 4, 2005 which revisited issues she had previously raised and also stated that she was denied effective assistance of counsel when she unsuccessfully attempted to withdraw her plea at the sentencing hearing.  (Doc. 85).

8. Petitioner's § 2255 Motion, filed within one year of the Judgment and Sentence, is

---

[2] Petitioner does not provide the Court with any legal authority for her "Designation Order" argument. Moreover, with regard to her malicious prosecution claim, Petitioner does not provide the Court with any facts that would support such a claim.  Accordingly, these claims are without merit.

timely under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2255. An evidentiary hearing is unnecessary because the motion, files, and records of the case conclusively show that Ramirez is not entitled to relief. *See* 28 U.S.C. § 2255; Rule 8(a), Rules Governing Habeas Corpus Under Section 2255.

9.      Petitioner did not raise her claims on direct appeal. In general, "'[a] defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless she can show cause for her procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.'" *United States v. Talk*, 158 F.3d 1064, 1067 (10th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Ineffective assistance of counsel claims are an exception to this general rule and may be raised for the first time in a § 2255 proceeding. *See United States v. Galloway*, 56 F.3d 1239, 1240-42 (10th Cir. 1995). Petitioner's claims each involve elements of ineffective assistance of counsel and are not barred by the rule announced in, *United States v. Frady*, 456 U.S. at 167-68.

10.      In order to obtain habeas relief for ineffective assistance of counsel, "a Petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson,* 211 F.3d 543, 555 (10th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688)(1984)). In order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

11.      Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The inquiry is

6

"'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (*citing Strickland*, 466 U.S. at 689). A fair assessment of attorney performance requires a reviewing court to "eliminate the distorting effects hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F. 3d 1286, 1295 (10th Cir. 2000); *see also Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995). Petitioner has failed to satisfy either prong of *Strickland*.

12.    In her first claim, Petitioner asserts that counsel was ineffective because he did not adequately review the plea agreement with her, which meant that her plea was not made knowingly and voluntarily, and stated to the Court at the sentencing hearing that she only had only been given two minutes to review the agreement prior to the plea hearing. (Tr. 1/27/04, Sentencing at 7). As the Supreme Court noted in *Hill v. Lockhart*, "[in] the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth. . . The second, or 'prejudice' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (internal citations omitted). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (quoting *Hill*, 474 U.S. at 56). Further, the

Tenth Circuit has found that "[a]dvice - even strong urging by counsel" does not indicate that a plea was coerced, nor does it "invalidate a guilty plea" *Id.* at 1214.  Finally, in *Miller v. Champion*, the Tenth Circuit stated that weighing "the evidence that might have been marshaled at trial. . . provide[s] circumstantial evidence of the defendant's state of mind when he made his plea." *Miller v. Champion*, 262 F.3d 1066, 1073 (10th Cir. 2001).

13.     Petitioner fails to satisfy either prong of the *Strickland* standard. *Strickland*, 466 U.S. at 688.  First, Petitioner cannot show that counsel's performance was deficient. *Id.* When the Court questioned counsel during the sentencing hearing as to whether Petitioner only had two minutes to review the plea agreement, counsel stated, "Your Honor, I would rather at this point not say anything to prejudice my client, but certainly I think the record will reflect otherwise."   (Tr. 1/27/04, Sentencing at 7).  Thus, counsel's statement would indicate that Petitioner had more than two minutes to review the plea agreement.  Further, counsel for Petitioner filed an Affidavit that states that "[o]n several occasions I met with [Petitioner] and explained, in detail, her plea agreement as well as the strengths and weaknesses of the governments [sic] case.  I met with her in person and over the phone. . .An original plea agreement was executed the day of her plea, however an exact copy of the executed agreement was discussed, at length with [Petitioner], prior to the day of the plea."  (Whitley Aff. ¶ 4, Doc. 9, Ex. 3)  Counsel also stated in his affidavit that it was his opinion that Petitioner "made a knowing, voluntary, and informed decision to plead guilty."[3]  (Whitley Aff. ¶ 6, Doc. 9, Ex.

---

[3] Moreover, during the plea hearing, upon questioning Petitioner indicated that she read the plea agreement before she signed it, that she had spoken with her counsel before signing it, and that she understood the agreement.  (Tr. 09/08/03 at 9).  She further indicated that she did not have any questions regarding the agreement or the rights discussed in the agreement, including the right to trial by jury, and understood that she was giving up those rights (Tr. 09/08/03 at 9-10).  When asked if she understood that she could be subject to imprisonment of up to five years, she answered affirmatively.  (Tr. 09/08/03 at 10).  Thus, Petitioner's plea colloquoy suggests that she knowingly and voluntarily made the decision to plead guilty.

3).  Thus, Petitioner's claim that she only had two minutes to review the plea agreement and was unaware of its ramifications remains unsupported.  Petitioner fails to meet the first prong of the *Strickland* test and her claim of ineffective assistance of counsel with regard to the amount of time counsel spent with Petitioner reviewing the plea agreement fails.  *Strickland*, 466 U.S. at  688. Further, even if the Court assumed that counsel's performance was deficient, Petitioner fails to meet the second prong of the *Strickland* test.  *Id.*  Petitioner does not assert in her Motion that but for counsel's errors she would not have pleaded guilty.  *Lockhart*, 474 U.S. at 58.  As such, Petitioner's first claim of ineffective assistance of counsel is without merit.

14.     In a related claim, Petitioner states in the Addendum to her § 2255 Motion that she was denied effective assistance of counsel when she unsuccessfully attempted to withdraw her plea at the sentencing hearing.  As the Tenth Circuit noted in *United States v. Hickok*, "[e]ven though the general rule is that motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality,  still the decision thereon is within the sound discretion of the trial court. Thus, unless it is shown that the trial court acted *unjustly* or *unfairly*, there is no abuse of discretion."  *United States v. Hickok*, 907 F.2d 983, 986 (10th Cir. 1990) (emphasis added) (citations omitted).  As noted in Footnote 3, *supra*, Petitioner indicated at the plea hearing that she read the plea agreement before she signed it, that she spoke with counsel before signing it, and that she understood the agreement.  (Tr. 09/08/03 at 9).  She also indicated that she did not have any questions regarding the agreement and understood that she was giving up the right to trial by jury.  (Tr. 09/08/03 at 9-10).  Lastly, she expressed that she understood that she could be subject to imprisonment of up to five years.  (Tr. 09/08/03 at 10). Thus, at the sentencing hearing, the Court did not allow Petitioner to withdraw her plea because the plea colloquy held during Petitioner's plea hearing on September 8, 2003 was

thorough.  (Tr. 1/27/04, Sentencing at 9).  It was within the discretion of the trial court to make those findings and Petitioner has not made a showing the trial court acted unjustly and unfairly; thus, counsel was not deficient for not arguing that Petitioner should have been allowed to withdraw her plea.  *Hickok*, 907 F.2d at 986; *Strickland*, 466 U.S. at 688.  Further, as noted above, even if the Court assumed that counsel's performance was deficient, Petitioner fails to meet the second prong of the *Strickland* test because she does not assert in her Motion that but for counsel's errors she would not have pleaded guilty.  *Lockhart*, 474 U.S. at 58.  As such, Petitioner's claim that counsel was ineffective because she was unable to withdraw her plea fails.

15.    Petitioner next claims that she was denied effective assistance of counsel because counsel failed to present the Court with mitigating circumstances such as her truthfulness and timely acceptance of responsibility.  Again, Petitioner fails to meet the first prong of the *Strickland* test.  At Petitioner's sentencing hearing, counsel asked the Court to determine that Petitioner's criminal history category was I as opposed to II.  (Tr. 1/27/04, Sentencing at 3; Doc. 56).  In asking the Court to make this determination, counsel stated, "She has accepted responsibility" and that she "legitimately made dozens and dozens of trips to visit [her] family in El Paso.  She found people in need. . .[a]nd I think most of her life, the service in the military, was exemplary. . ." (Tr. 1/27/04, Sentencing at 3, 4).  Thus, counsel did in fact present the Court with mitigating factors.  The Court responded to counsel's discussion of Petitioner's mitigating factors by stating, "Do you think I fell off the turnip truck?"  (Tr. 1/27/04, Sentencing at 5). The fact that the Court did not accept counsel's presentation of mitigating factors does not indicate that counsel's performance was deficient; but rather that the Court simply did not accept them.  *Strickland*, 466 U.S. at 688.  Thus, Petitioner fails to demonstrate that she received ineffective assistance of counsel on her second claim.

16.     Petitioner next asserts that counsel was ineffective because she received a sentence that violated the Eighth Amendment's prohibition against cruel and unusual punishment as well as equal protection under the Fourteenth Amendment.   Petitioner received a sentence of 21 months of incarceration.  (Doc. 61)  Her Co-Defendant and daughter received a sentence of 12 months and one day.  (Doc. 69).  Petitioner seems to argue that because her Co-Defendant received a shorter sentence, Petitioner's sentence violates both the Eighth Amendment's prohibition against cruel and unusual punishment and violates equal protection under the Fourteenth Amendment.   Petitioner's Co-Defendant testified that she did not learn that Petitioner was transporting illegal aliens until the day they were arrested.  (Tr. 1/27/04, Evid. Hrg. at 103).  Thus, Co-Defendant's level of involvement in the illegal activity was not identical to that of Petitioner's.  Further, Petitioner's Co-Defendant pleaded guilty to different counts of the Indictment than did Petitioner and her Criminal History Category was I.  *See* Docs. 58, 61, 69.  In the end, there is no reason for Petitioner's sentence to require the same term of imprisonment as that of her Co-Defendant and  counsel was not deficient in not making this meritless argument to the Court.  *Strickland*, 466 U.S. at  688.  With regard to the cruel and unusual punishment argument, Respondent correctly cites the Tenth Circuit's decision in *U.S. v. Youngpeter*:

> [t]he Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. Within this limitation, the determination of the proper penalty is a matter for the legislature. If the imposed sentence is within the statutory limits. . .an appellate court generally will not regard it as cruel and unusual punishment. *United States v. Youngpeter*, 986 F.2d 349, 355 (10th Cir. 1993) (citations omitted).

As Respondent correctly notes, Petitioner's sentence of 21 months of imprisonment was within the statutory maximum of five years and was within the applicable guideline range of 15-21 months.  As such, counsel was not ineffective for not arguing that Petitioner's sentence violated the Eighth Amendment.  *Strickland*, 466 U.S. at  688.  The Court also notes that the plea agreement clearly stated

that Petitioner's term of imprisonment would be at the high end of the guideline range. *See* Doc. 46 at 3. Petitioner's claims that her term of imprisonment violates the Eighth and Fourteenth Amendments also fails.

## IV. Recommended disposition

I recommend that Movant's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed August 12, 2004 (Doc. 74) be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**